**In re TIG INSURANCE COMPANY, a California corporation, Plaintiff,**

v.

**Gary SMOLKER, an individual, and Alice Smolker, an individual, and Does 1–10, inclusive, Defendants.**

**Gary Smolker and Alice Smolker, Cross–Complainant,**

v.

**Home Savings Termite Control, Inc., et al., Cross–Defendants.**

**And Related Cross–Actions.**

**Bankruptcy No. LA 01–99911 XX. Adversary No. LA–01–01646–BB.**

United States Bankruptcy Court, C.D. California.

July 13, 2001.

---

---

**MEMORANDUM OF DECISION RE (1) MOTION OF DEFENDANTS AND CROSS–COMPLAINANTS ALICE SMOLKER AND GARY SMOLKER TO ABSTAIN AND REMAND TO STATE COURT AND (2) MOTION OF W.R. GRACE & COMPANY AND GRACE DAVISON TO TRANSFER VENUE OF ADVERSARY PROCEEDING TO DISTRICT OF DELAWARE**

SHERI BLUEBOND, Bankruptcy Judge.

W.R. Grace & Company ("Grace") and certain of its affiliates (the "Affiliates") filed for protection under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware on April 2, 2001.[1]  On April 30, 2001, Grace and Grace Davison (jointly, the "Grace Parties"), who are cross-defendants in a lawsuit then pending in Los Angeles Superior Court, removed this lawsuit to the United States Bankruptcy Court for the Central District of California, Los Angeles Division, pursuant to 28 U.S.C. § 1452, giving rise to the above-entitled adversary proceeding (the "Action").

This matter comes before the Court on (1) the motion of Alice Smolker and Gary Smolker (jointly, the "Smolkers"), who are defendants and cross-complainants in the Action, to abstain and remand the Action to the Los Angeles Superior Court and (2) the motion of the Grace Parties to transfer the Action to the United States District Court for the District of Delaware (jointly, the "Motions").  For the reasons set forth below, the Court concludes that the Action should be remanded to the Los Angeles Superior Court in its entirety and that the Grace Parties' motion to transfer venue to the District of Delaware should be denied.[2]

I

**FACTUAL BACKGROUND**

The facts and circumstances upon which the Motions are based are not in dispute. In or about 1996, the Smolkers hired Home Savings Termite Control, Inc. ("Home Savings") to perform certain services within their condominium unit in Playa del Rey, California.  In performing

---

**1.**  By order entered April 6, 2001, reference of these chapter 11 cases to the Bankruptcy Court under 28 U.S.C. § 157(a) was revoked and these cases were reassigned to District Judge Joseph J. Farnan, Jr. of the United States District Court for the District of Delaware.

**2.**  In response to an emergency motion by the Grace Parties, the Court continued the hear-

these services, Home Savings used an amorphous silica gel that was manufactured by Grace. The Smolkers claim that, either as a result of defects in the product manufactured by Grace, and/or due to the manner in which they were applied by Home Savings, they have suffered bodily injury and property damage.

The Smolkers attempted to pursue various remedies against their condominium owners' association, Pacific Villas Homeowners Association ("Pacific"), and against their homeowners' insurance company, TIG Insurance Company ("TIG"), but did not find the results of these efforts satisfactory. In July of 1997, TIG commenced the Action in Los Angeles Superior Court, seeking a declaration concerning the availability of insurance coverage for the Smolkers' claims. The Smolkers filed a cross-complaint in the Action naming, among other parties, Home Savings and the Grace Parties. Other cross-actions followed.

This matter has been actively litigated in Los Angeles Superior Court ever since. The Superior Court has presided over four summary judgment motions, several demurrers and various discovery motions. Four appeals are presently pending.[3] The

Superior Court bifurcated the Action for trial and scheduled trial of the first phase to commence on September 17, 2001.[4] The Superior Court's file consists of approximately 52 volumes. This is the only litigation matter in which Grace or the Affiliates are currently involved that relates to amorphous silica gel.

None of the parties are located in Delaware.[5] All percipient witnesses in this matter reside in California. The Grace affiliate that manufactured the amorphous silica gel used in the Smolker's condominium is located in Southern California. The only connection that the Action has to Delaware is that one of several cross-defendants filed a chapter 11 case in Delaware [6] based on the fact that it or one or more of the Affiliates is a Delaware corporation. The Grace Parties are the only parties for whom Delaware might be a more convenient forum than Los Angeles, California.

Most if not all material issues to be litigated in the Action are matters of state law. There is no basis for federal jurisdiction over any portion of the Action other than 28 U.S.C. § 1334. None of the parties has a contractual right to in-

---

ings on the Motions from June 19, 2001 to June 22, 2001, and, thereafter, took these matters under submission until July 13, 2001, to give the United States District Court for the District of Delaware an opportunity to rule on a motion by Grace for an order enjoining the prosecution of certain actions under section 105 of the Bankruptcy Code, the entry of which order might have rendered the Motions moot. As of the date of this Memorandum, no such order has been issued by the District Court in Delaware.

3. These appeals have been consolidated and, pursuant to a prior order of this Court, have been remanded for further proceedings.

4. Pursuant to the Superior Court's January 5, 2000 "Order for Bifurcation," Phase I of the

trial is to include issues raised in cross-complaints against the Grace Parties, Home Savings, Pacific, Wayne Morris and Rikk Thompson. Issues raised by the complaint and cross-complaints against insurers are to be resolved in Phase II of the trial.

5. The Debtors' corporate headquarters are in Columbia, Maryland.

6. The Court has taken judicial notice of the records maintained on WebPacer with regard to the chapter 11 cases filed by Grace and the Affiliates in Delaware and has not been able to locate any record of a bankruptcy case commenced by an entity known as "Grace Davison." Thus, the Court has assumed for the purpose of this Memorandum that only Grace itself is a debtor in bankruptcy.

demnification as against Grace of any of the Affiliates for any recoveries that may be obtained against them in the Action; however, if liability is imposed on certain of the cross-defendants under certain of the theories of recovery alleged in the cross-complaints, one or more of the cross-defendants might be able to assert claims for equitable indemnification against Grace. Thus, with the exception of any claims that the Smolkers' or other parties seek to assert against Grace itself, which may be characterized as core proceedings under 28 U.S.C. § 157(b)(2)(B), the balance of the Action is, *at best,* a non-core, related proceeding within the meaning of Section 1334.

## II

### THE SMOLKERS' REQUEST FOR ABSTENTION UNDER SECTION 1334(c)

Section 1334(c)(1) of Title 28 of the United States Code *permits* the Court, in the interest of justice, or in the interest of comity with State courts or respect for state law, to abstain from hearing a proceeding that arises under or arises in or is related to a case under Title 11. Section 1334(c)(2) of Title 28 *requires* the Court to abstain from hearing a proceeding in response to a timely motion by a party in interest, if it is a "State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section," if "an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

■ Although the provisions of Section 1334(c)(2) might appear on their face to compel abstention in this matter, and the Court requested and received supplemental briefing on this issue from the parties, the Ninth Circuit has recently held that Sections 1334(c)(1) and 1334(c)(2) are inapplicable in actions that have been removed pursuant to 28 U.S.C. § 1452. *Schulman v. State of California (In re Lazar),* 237 F.3d 967 (9th Cir.2001). With regard to such actions, at least within the Ninth Circuit,[7] remand, rather than abstention, is the appropriate mechanism for returning a matter to state court. Accordingly, the Smolkers' request for abstention must be denied.

## III

### THE SMOLKERS' REQUEST THAT THE ACTION BE REMANDED

■ Section 1452(b) of Title 28 provides that the court to which a claim or cause of action has been removed under Section 1452(a) may remand such claim or cause of action "on any equitable ground." As the Bankruptcy Appellate Panel explained in *McCarthy v. Prince (In re McCarthy),* 230 B.R. 414 (9th Cir. BAP 1999), "This 'any equitable ground' remand standard is an unusually broad grant of authority. It subsumes and reaches beyond all of the reasons for remand under nonbankruptcy removal statutes. [Citation omitted.] At bottom, the question is committed to the sound discretion of the bankruptcy judge."

■ In exercising this "broad grant" of discretion, courts have traditionally looked to a number of factors to determine whether remand would be equitable in a given case. These factors have included, among

---

7. The Ninth Circuit appears to be in the minority in holding this view. *See, e.g., Christo v. Padgett,* 223 F.3d 1324 (11th Cir.2000).

other things, judicial economy, comity and respect for state law decision-making capabilities, the impact that remand would have upon the orderly administration of the debtor's bankruptcy case, the effect of bifurcating claims and parties to an action and the possibilities of inconsistent results, the predominance of state law issues and nondebtor parties, and the extent of any prejudice to nondebtor parties. *See, e.g., Western Helicopters, Inc. v. Hiller Aviation, Inc.,* 97 B.R. 1, 2 (E.D.Cal.1988). However, *a bankruptcy court cannot retain jurisdiction that it does not have.* Claims that fall beyond the scope of the bankruptcy court's subject matter jurisdiction must be remanded to state court. *Bethlahmy v. Kuhlman (In re ACI–HDT Supply Co.),* 205 B.R. 231 (9th Cir. BAP 1997).

■ Claims against Grace are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) and therefore fall within the Court's subject matter jurisdiction under Section 1334. However, the bankruptcy court lacks subject matter jurisdiction over the balance of the Action (the "Remaining Claims"), as the Remaining Claims[8] are not even "related to" the Grace bankruptcy cases within the meaning of Section 1334(b).

■ In *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988), the Ninth Circuit adopted the definition of "related to" jurisdiction formulated by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). Under that definition, a proceeding is "related to" a bankruptcy case if its outcome could conceivably have any effect on the bankruptcy estate by altering the debtor's rights, liabilities, options or freedom of action (either positively or neg-

atively)ʼ and impacting in any way the handling and administration of the bankruptcy estate. *In re ACI–HDT Supply Co.,* 205 B.R. at 237.

In *Pacor,* Higgins brought a products liability suit in state court against Pacor. Pacor, in turn, filed a third party complaint for indemnification against Johns–Manville Corporation. Pacor removed the lawsuit to bankruptcy court on the theory, asserting that it was related to Johns–Manville's bankruptcy case. On appeal, the Third Circuit disagreed and concluded that the matter fell beyond the scope of the bankruptcy court's jurisdiction. In so doing, it explained that Higgins' action against Pacor was, "[a]t best, a mere precursor to the potential third party claim for indemnification by Pacor against Johns–Manville," as the outcome of the action would "in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor." As Johns–Manville was not a party to that action, the court reasoned, "it could not be bound by res judicata or collateral estoppel." *Pacor,* 743 F.2d at 995.

The facts of *Pacor* are strikingly similar to those of the instant case. If the other parties to the Action are permitted to proceed to judgment on the various claims that have been asserted against nondebtor parties, depending upon the outcome of the litigation and the theories of recovery under which the cross-complainants proceed, one or more of the cross-defendants *might* be able to assert a claim for equitable indemnification against Grace or another one of the Affiliates. However, Grace and the Affiliates will not be bound by any judgment that may be entered in the Ac-

---

8. As indicated in Note 6 above, this Court has not been presented with any evidence sufficient to establish that a bankruptcy case has been commenced with regard to Grace Davi- son. Accordingly, the term, "Remaining Claims," as used herein, includes claims against Grace Davison.

tion and will be free to relitigate any theories that will determine the extent, if any, of their liability under equitable indemnification theories. Thus, the bankruptcy court lacks subject matter jurisdiction over the Remaining Claims, and they must be remanded to the Los Angeles Superior Court on this ground alone.

■ However, in the alternative, the Court finds further that, even if it had subject matter jurisdiction over the Remaining Claims under section 1334, equity and the interests of justice would compel it to remand the Remaining Claims to state court. These claims are based entirely on state law. There are numerous parties in interest, only one of which appears to be a debtor in possession. The resolution of the Action with regard to the nondebtor parties will have no impact whatsoever on the Grace bankruptcy cases. The Los Angeles Superior Court has devoted a significant quantity of time to this matter and has developed a significant body of knowledge concerning the matter. The parties to the Action (other than Grace) would be significantly prejudiced if they were required to begin the education process anew with a new judge in a new court. The Los Angeles Superior Court is a convenient forum for all of the parties and is a forum in which the Action may proceed to trial before a jury with a minimum of delay. For all of these reasons, it is the judgment of this Court that the Remaining Claims should be remanded to the Los Angeles Superior Court.

Although the claims asserted directly against Grace, by contrast, do fall within the bankruptcy court's subject matter jurisdiction, equity and the interests of justice weigh in favor of remanding these claims to state court as well. Like the Remaining Claims, these claims are based entirely on state law, and the interests of judicial economy would be better served by having these matters resolved together with the related Remaining Claims. The Los Angeles Superior Court, having devoted many hours to the resolution of disputes in this matter over the course of the last several years, is the most appropriate forum for the parties to litigate these claims. Nevertheless, as the automatic stay currently remains in effect, litigation will only proceed as against Grace in the Action if the Delaware District Court concludes that it is appropriate for it to do so. Thus, the Delaware District Court will retain the ability to determine whether claims against Grace in the Action should be resolved through litigation in Los Angeles Superior Court or through the usual bankruptcy claims resolution procedures (or through such other claim resolution procedures as may be adopted in the Grace bankruptcy cases).

## IV

### THE GRACE PARTIES' MOTION TO TRANSFER VENUE TO DELAWARE

Having concluded that the Action should be remanded in its entirety to the Los Angeles Superior Court on equitable grounds, nothing remains of the Action to be transferred to Delaware. Thus, the motion of the Grace Parties for an order transferring venue of the Action to the District of Delaware (the "Venue Motion") must be denied. Nevertheless, even considering the merits of the Venue Motion without regard to the outcome of the Smolkers' motion for abstention and remand, this Court concludes that transfer of the Action to the District of Delaware is inappropriate.

■ Section 1412 of Title 28 authorizes the Court to transfer a proceeding to another district "in the interest of justice or for the convenience of the parties."

Adjudication of a request for a transfer of venue under Section 1412 requires a case-by-case analysis that is subject to the broad discretion of the court. *In re Bruno's, Inc.*, 227 B.R. 311, 324 (Bankr. N.D.Ala.1998). The party that seeks to transfer venue bears the burden of showing by a preponderance of the evidence that transfer would be appropriate. *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390–91 (2d Cir.1990).

■ Although the Venue Motion stresses at length the importance of the "home court presumption," the location of the debtor's bankruptcy case is not the only factor that courts have evaluated in considering whether to transfer venue of an adversary proceeding under Section 1412. Under the heading of the interests of justice, courts have considered, in addition to the location of the pending bankruptcy: whether the transfer would promote the economic and efficient administration of the bankruptcy estate; whether the interests of judicial economy would be served by the transfer; whether the parties would be able to receive a fair trial in each of the possible venues; whether either forum has an interest in having the controversy decided within its borders; whether the enforceability of any judgment obtained would be affected by the transfer; and whether the plaintiff's original choice of forum should be disturbed. *In re Bruno's*, 227 B.R. at 324–25 and cases cited therein. Under the heading of the convenience of the parties, courts have considered the location of the plaintiff and the defendant, the ease of access to the necessary proof, the convenience of the witnesses and the parties and their relative physical and financial condition, the availability of the subpoena power for unwilling witnesses, and the expense related to obtaining witnesses. *Id.* at 325; *see also Larami Ltd. v. Yes! Entertainment Corp.*, 244 B.R. 56 (D.N.J.2000).

In the instant case, with the exception of the home court presumption, *all* of the relevant factors are either neutral or weigh in favor of preservation of TIG's original choice of forum. In light of the size and complexity of the Grace bankruptcy cases, the transfer of the Action to Delaware is unlikely to have any material impact on the administration of the Grace bankruptcy cases. To the extent that a transfer would have any impact whatsoever on the administration of these bankruptcy cases, it could only be to further strain the limited resources of the Delaware District Court handling these bankruptcy cases. Moreover, a transfer of the Action to Delaware is unlikely to reduce any of the administrative expenses that the debtors would incur in connection with the resolution of the Action, as Grace would be required to retain and educate new or additional counsel to represent its interests in connection with this Action in Delaware or to incur the additional expense of transporting lawyers based in Los Angeles to Delaware for court appearances. Thus, it is difficult to see how this factor would weigh in favor of the requested transfer.

Similarly, all of the parties and all of the percipient witnesses are located in or near the Los Angeles or Southern California area. Therefore, were this matter to be tried in Delaware, all of the parties would be required to incur significant travel expenses for themselves, their attorneys and their witnesses. Although this additional expense might be trivial for an entity as large as Grace, the individual cross-complainants are far less likely to be able to afford this expense. Further, the premises that are the subject of the Action are located in Southern California. All of the

records maintained by the parties concerning the events and circumstances at issue in the Action are located within Southern California. It would not advance the interests of judicial economy or the convenience of the parties to have to transport them to Delaware.

Presumably, the parties would be able to get a fair trial in either forum and would be able to enforce any judgments that they obtained, whether they were entered by the Los Angeles Superior Court or the District Court in Delaware (although it would add yet another level of expense for the Smolkers if they were required to register any judgment that they obtained in Delaware in another state in order to enforce it). Moreover, it is unlikely to be *easier* for the parties to have access to any necessary proof or to compel witnesses to appear in Delaware than in Los Angeles. Thus, the Grace Parties have failed to sustain the burden of establishing that the transfer of the Action to Delaware would serve *either* the interests of justice or the convenience of the parties. Accordingly, the Venue Motion must be denied.

## V

### CONCLUSION

For the reasons set forth above, the Action is hereby remanded in its entirety to the Los Angeles Superior Court, and the Venue Motion is hereby denied.